Bruno P. Larusso, Petitioner v. Workmen's Compensation Appeal Board (E.J.T. Construction, Inc. and Zurich Insurance Company, Insurance Carrier), Respondents.

Submitted on briefs June 4, 1985, to Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*James M. Jacquette,* with him, *Curtis Wright, Timoney, Knox, Hasson & Weand,* for petitioner.

*Charles S. Katz, Jr.,* with him, *Thomas E. Sennett, Swartz, Campbell & Detweiler,* for respondent, E.J.T. Construction, Inc.

OPINION BY SENIOR JUDGE BARBIERI, December 13, 1985:

Bruno P. Larusso, Claimant, brings before this Court for the second time his claim for total disability benefits for a heart attack injury suffered on October 17, 1975. Now, as in the former appeal to this Court, *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board (Larusso),* 47 Pa. Common-

wealth Ct. 492, 408 A.2d 226 (1979), the sole issue is whether or not legally proper notice was given within the 120-day limitation period as provided in Section 311 of The Pennsylvania Workmen's Compensation Act,[1] 77 P.S. §631. When the case was before this Court previously, we remanded in a decision by Judge BLATT dated November 30, 1979 to provide an opportunity for the parties and the referee to address the specific issue as to when the Claimant first knew that his injury was work-related, thus to establish the time as of which the 120-day period for giving notice would begin to run. This, specifically, would address that portion of Section 311, 77 P.S. §631, that states

> . . . the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

Ruling that the Board had mistakenly found that notice was properly given under Section 311, the Board reversing the disallowance of the referee, we stated:

> The second sentence of Section 311 of the Act clearly provides that, when the relationship of the injury to the employment is not known to the employee, the 120-day period does not begin to run until the employee either knows or should know of such a relationship. Here, how-

---

[1] Act of June 2, 1915, P.L. 736, *as amended.*

The relation of Claimant's disability to his unemployment is not contested. The referee found:

11. The Claimant's myocardial infarction of 10/17/75 has rendered the Claimant disabled from 10/17/75 for an indefinite time in the future.

12. At the time of his *work-related* injury on 10/17/75, Claimant was earning $450.00 per week. (Emphasis added.)

ever, the referee failed to make any finding whatever as to when the claimant knew or should have known of the causal relationship between his employment and his heart attack. And as the Board correctly pointed out in its opinion, there is no testimony of record concerning this crucial issue.

On the remand, the Claimant adduced the testimony of his attending physician, Henry B. Borska, M.D., apparently seeking to prove that the work-relatedness of his heart attack of October 17, 1975, was not known to him until informed of this by Dr. Borska on March 29, 1976. Dr. Borska testified that, because of Claimant's sensitivity and emotional stress involved, he had deferred advising against a return by Claimant to his employment; that

Upon his return he continued for more than three or four months or more to be symptomatic with exertion of chest pain, shortness of breath and it was apparent that he was no longer employable at that point. The risk of returning to work could be fatal and we so informed him.

. . . .

And when we discussed what his future would be, we felt that it would be impossible for him to return to work. I did not discuss this with Bruno until I saw him after his third heart attack which was approximately again two weeks after his discharge from the hospital. I don't think that made subsequent recovery that easy. It upset him greatly.

The referee found that this testimony was acceptable while the Claimant's testimony was not. He failed to state what portion of Claimant's testimony was not accepted by him. This finding is as follows:

23. The Referee accepts the testimony of Henry B. Borska, M.D., and rejects the testimony of the Claimant and finds that the conversation which Dr. Borska had with Claimant on 3/29/76 pertained to the reasons that Claimant would be unable to return to his prior occupation in the future. The Referee finds that the discussion did not involve the question of the causal relationship between Claimant's work activities of the week ending 10/17/75 and his second myocardial infarction.

We believe that the referee has confused Claimant's knowledge of disability with the question of knowledge of the work-relatedness of that disability which is apparent in the following findings:

8. Immediately upon his discharge from Chestnut Hill Hospital, Claimant knew he was disabled and applied for Social Security Disability Benefits. He received an Award. The Claimant knew the following:

. . . .

(m) Claimant knew he was disabled and even signed up for Social Security upon his discharge from the hospital following the second heart attack. Dr. Borska had informed Claimant that he was disabled as a result of the second heart attack.

With regard to notice, the referee's 15th and 16th findings are of interest as follows:

15. On 10/19/75, a Sunday, Claimant's daughter telephoned Larry Troise, a supervisory employee of the Defendant. Through this conversation, Larry Troise learned that Claimant had been hospitalized with a heart attack and would not be in to work on the following Monday.

16. On Monday evening, 10/20/75, Edward Troise, Sr., telephoned Claimant's home and spoke with Claimant's daughter. No evidence was presented with respect to the content of that conversation.

Other findings are to the effect that the Claimant should have known in October, 1975, that the heart attack of October 17, 1975, was work-related;[2] and that the defendant first knew of the work-relatedness of Claimant's heart attack due to the injury of October 17, 1975, was on the filing of the Claim Petition, May 26, 1976, and that the defendant could not have learned of the work relationship "by the exercise of reasonable diligence,"[3] presumably prior to the May 26, 1976 date.

We are not furnished with any record to support the statement in finding of fact No. 16 concerning a telephone call on October 20, 1975 from Edward Troise, Sr., the owner of the employer company, nor is there any testimony brought to our attention or found on our review concerning what the content of that conversation was.

Concerning finding of fact No. 15, the daughter's telephone call of October 19, 1975, the referee made the following Conclusion of Law:

1. The Referee should and hereby does reverse his prior ruling with respect to the admissabil-

---

[2] The referee's Finding No. 22, reads:

22. Claimant knew or should have known in October, 1975, that the myocardial infarction that he suffered on 10/17/75 was casually related to his work activity on 10/17/75 and the work activities of the week ending on that date.

[3] The referee's Finding No. 18, reads:

The Defendant did not know nor, by the exercise of reasonable diligence, should the Defendant have known that Claimant's heart attack which occurred while he was asleep in bed on a Friday evening was related to his work activity with the Defendant during the week ending 10/17/75.

ity of the testimony of Larry Troise as to the statement made to him by Claimant's daughter via the telephone on Sunday night, 10/19/75. Accordingly, Claimant's Counsel's objection is overruled and the response of Mr. Troise as contained on page 14 of his Notes of Testimony is not stricken.

As we view this, "Conclusion of Law", it was a ruling on admissibility of evidence which took place after the record had been closed and without any opportunity to pursue the line of testimony which had been previously excluded on the record and which this conclusion of law now made appropriate. We agree with the conclusion that it was an erroneous ruling to exclude the evidence of the owner's son, Larry Troise, who was in a supervisory capacity, since this line of questioning went to the heart of the issue as to appropriate notice under Section 311.[4] To make this ruling after the record had been closed, however, without an opportunity to pursue the questioning forestalled by the ruling, going to the very heart of the sole issue in this case, was clear, reversible error. Accordingly, with deep regret because the course of

---

[4] The notice requirement may be satisfied other than by the Claimant, if the "employer . . . [has] . . . knowledge of the injury," and this is sufficient if given to, or known by, any "immediate or other superior of the employee . . . or any agent of the employer regularly employed at the place of employment of the injured employe." Sections 311, 312 and 313, 77 P.S. §§631, 632 and 633.

Section 313 concludes: "Knowledge of the occurrence of the injury on the part of any such agents shall be the knowledge of the employer."

As was stated by our Supreme Court in *Katz v. Evening Bulletin*, 485 Pa. 536, 403 A.2d 518 (1979), the Amendment to Section 311 operated "to eliminate the notice requirement where the employer knows of the injury," citing and relying upon language in *Wilkinson v. United Parcel Service*, 158 Pa. Superior Ct. 22, 31, 43 A.2d 408, 412 (1945), that "a meritorious claim ought not, if possible be defeated for technical reasons. . . ."

this litigated claim has been so extended, we must remand in order to provide an opportunity for the parties to take the testimony of Larry Troise, Edward Troise, Sr., or any other available testimony, with the right of examination and cross-examination of any such witnesses on this issue as to when the work-relatedness of the Claimant's injuries suffered on October 17, 1975, was known to the Claimant or communicated to the employer or its representative to provide legally sufficient evidence of the notice required under Section 311 of the Act as defined in Sections 312 and 313 of the Act.[5]

ORDER

AND Now, December 13, 1985 the order of the Workmen's Compensation Appeal Board as of No. A-82765, dated October 20, 1983, is reversed; the record is remanded for further proceedings pursuant to this opinion. The Board is further directed to expedite the scheduling of such proceedings in view of the length of time in which this matter has been pending.

Jurisdiction relinquished.

---

[5] 77 P.S. §§631, 632, 633.